IN THE U.S. DISTRICT COURT OF MARYLAND
FOR DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Casey Knox** <br> 100 Netispa Drive <br> Severna Park, MD 21146 | * <br><br> * | |
| *On behalf of herself and* <br> *Others similarly situated* | * <br><br> * | |
| **Plaintiff** | * | |
| v. | <br> * | Case No. _____ <br> **JURY TRIAL REQUESTED** |
| **Hooper's Crab House, Inc.** <br> SERVE ON:  Harold B. Gordy Jr., Esq. <br> 12913 Ocean Gateway <br> Ocean City, Maryland 21842 | <br> * <br><br> * | |
| **Pete Shepard** <br> 12913 Ocean Gateway <br> Ocean City, Maryland 21842 | * <br><br> * | |
| **Royette Shepard** <br> 12913 Ocean Gateway <br> Ocean City, Maryland 21842 | * <br><br> * | |
| **Patrick Brady** <br> 12913 Ocean Gateway <br> Ocean City, Maryland 21842 | * <br><br> * | |
| **Ryan Intrieri** <br> 12913 Ocean Gateway <br> Ocean City, Maryland 21842 | * <br><br> * | |
| **Defendants** | * / | |

## COLLECTIVE ACTION COMPLAINT

Plaintiff, Casey Knox, by and through her undersigned counsel, states a collective action complaint against Defendants Hooper's Crab House, Inc., Pete Shepard, Royette Shepard, Patrick Brady, and Ryan Intrieri, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

("FLSA"), and supplemental state law claims under the Maryland's Wage and Hour Law, Md. Code Ann., LE Art. § 3-401 *et seq* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., LE Art. § LE 3-501 *et seq.* ("MWPCL"), and demands a jury trial, as follows:

## Introduction

1. This is a collective action for unpaid wages, damages, and relief provided by the FLSA, 29 U.S.C. § 201 *et seq.*, the MWHL, Md. Code Ann., LE Art. § 3-401 *et seq.*, and the MWPCL, Md. Code Ann., LE Art. § 3-501 *et seq.* Plaintiff brings this action on behalf of herself and all persons similarly situated restaurant servers who have worked at the Ocean City, Maryland, Hopper's Crab House restaurant, which is owned, controlled and operated by the Defendants named herein.

2. Plaintiff seeks on behalf of herself and others similarly situated, in addition to the actual sums owed in unpaid minimum wages and overtime wages, liquidated and statutory damages pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the under the FLSA, MWHL, and MWCPL.

## Jurisdiction and Venue

3. This Court has subject matter/original jurisdiction over this action pursuant to 29 U.S.C. § 206, 29 U.S.C. § 207, and 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over the MWHL and MWPCL claims pursuant to 28 U.S.C. § 1367(a) because said claims are so related to the FLSA claims that they form part of the same case or controversy.

5. Venue and personal jurisdiction are proper pursuant to 28 U.S.C. § 1391(b), because Defendants do business within this judicial district and the events and omissions giving rise to

the claims in this Complaint occurred in this judicial district.

## Parties

6. Defendant Hooper's Crab House, Inc. (t/a "Hooper's Crab House") is a corporation formed in the State of Maryland to engage in the operation of a restaurant, bar, and related activities. Defendant Hooper's Crab House, Inc. owns and operates Hooper's Crab House, a seafood restaurant serving the greater Ocean City, Maryland area and located at 12913 Ocean Gateway, Ocean City, Maryland 21842.

7. At all times material herein, Defendant Hooper's Crab House, Inc. had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

8. Defendant, Hooper's Crab House, Inc. employs at least two or more employees who are engaged in commerce, and who produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce as a single enterprise under the FLSA. For instance, there are employees of Defendant Hooper's Crab House, Inc. who negotiate and purchase food from producers and suppliers who operate in interstate commerce. There are employees who cook, serve, and otherwise handle this food, as well as the beverages, that cross interstate and even international boundaries. There are employees who regularly use wire and electronic means of communicating interstate, including Plaintiff and other servers who also regularly sell food and beverages that have moved in interstate commerce, and who regularly process credit card transactions for customer payments. There are employees who use, in Defendants' restaurant, cleaning products, dishes, tools, utensils, napkins, menus, signage, among other items, that have moved in interstate commerce. Accordingly, subject matter jurisdiction exists because Plaintiff, and others similarly situated, are employed by Defendant Hooper's Crab House, Inc., a covered entity, satisfying the enterprise coverage

provisions under the FLSA. Defendant Hooper's Crab House, Inc. also satisfies the coverage provisions of the MWHL. As a covered enterprise, Defendant Hooper's Crab House, Inc. has at all material times been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.

9. Defendants Pete Shepard and Royette Shepard (collectively referred to herein as the "Shepard Defendants") are husband and wife owners of Defendant Hooper's Crab House, Inc., with complete operational control of Hooper's Crab House. Upon information and belief, the Shepard Defendants maintain joint custody and control of Hooper's Crab House business records and shares responsibility with one another for maintaining those records, such as payroll records. Additionally, upon information and belief, for all times material to this case, the Shepard Defendants were, and continue to be, aware of operational issues throughout the restaurant, and are knowledgeable of Hooper's Crab House past and present employment practices and policies. Upon information and belief, for all times material to this case, the Shepard Defendants possessed and continue to possess the authority and discretion to fix, adjust and determine hours worked and amounts paid with respect to employees at Hooper's Crab House, including Plaintiff, and possessed the ability to hire employees and both Shepard Defendants have terminated employees. Upon information and belief, the Shepard Defendants receive and continue to receive income from Defendant Hooper's Crab House, Inc., and have been enriched by the failure of the Defendants to properly pay their workers. At all times material herein, the Shepard Defendants have been (together and separately) an "employer" within the meaning of the FLSA, MWHL, and MWPCL. The Shepard Defendants are thus jointly and individually liable for damages to Plaintiff, and others similarly situated opt-in Plaintiffs, arising under the FLSA, MWHL, and MWPCL.

10. Defendants Patrick Brady and Ryan Intrieri served as manager and general manager, respectively, of Defendant Hooper's Crab House, Inc. Upon information and belief, for all times material to this case, Defendants Brady and Intrieri were and are involved in and responsible for, informing employees of all other Hooper's Crab House employment policies and practices; scheduling employee work hours/shifts; supervising and conducting payroll operations, including distribution of paychecks to employees; assignment of work tasks and job positions; and setting and supervising employee clock-in and clock-out requirements and practices. Additionally, upon information and belief, for all times material to this case, both Defendants Brady and Intrieri possessed and continue to possess authority to hire and fire Hooper's Crab House employees. At all times material herein, Defendants Brady and Intrieri (together and separately) have been an "employer" within the meaning of the FLSA, MWHL, and MWPCL. Defendants Brady and Intrieri are jointly and individually liable for damages to Plaintiff, and others similarly situated opt-in Plaintiffs, arising under the FLSA, MWHL, and MWPCL.

11. As set forth below, Plaintiff seeks unpaid minimum wages and unpaid overtime wages, in amounts to be determined based on the evidence, as well as liquidated and statutory damages, pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

12. Upon information and belief, there exists more than fifty (50) employees of Defendants at Hoopers Crab House who are similarly situated to Plaintiff, who have worked for Defendants in the last three years as restaurant servers, and who have not received minimum wages and/or overtime wages, including wages at the proper rate.

13. Plaintiff and other employees similarly situated, who received tipped income, were not exempt under the MWHL and FLSA's minimum wage and overtime requirements.

14. By failing to pay the statutory minimum wage that was due to Plaintiff and other similarly situated server employees, Defendants willfully violated very clear and well-established minimum wage provisions of the FLSA. Plaintiff further alleges that the Defendants violated the minimum wage provisions of the MWHL. Additionally, by failing to pay overtime to Plaintiff and similarly situated hourly employees, Defendants willfully violated very clear and well-established overtime provisions under the FLSA and the MWHL. In addition to actual sums owed, Plaintiff seeks, on behalf of herself and other employees similarly situated, liquidated (statutory) damages pursuant to the FLSA, pre-judgment interest on all amounts owed under the MWHL, three times the minimum wages and overtime owed under the MWHL pursuant to the statutory damage provisions of the MWHL and MWPCL, and attorneys' fees and costs as provided under the FLSA, the MWHL and MWPCL.

### **Factual Allegations**

15. Plaintiff was employed by the Defendants at Hooper's Crab House restaurant within the three years preceding the filing of this lawsuit, early June 2015 through September 1, 2015. She was re-employed by Defendants at Hooper's Crab House again in late May 2016 through approximately July 2, 2016. For the entire time that Plaintiff worked for Defendants at Hooper's Crab House restaurant, Plaintiff performed manual work and was non-exempt from the minimum wage and overtime provisions of the FLSA and MWHL.

16. When Plaintiff began employment with Defendants at Hooper's Crab House restaurant in early June 2015, she initially trained as a hostess and food runner, but soon thereafter worked primarily as a restaurant server. Initially, Plaintiff's work schedule was for four days per week, but then increased to five days per week. Beginning in July, 2015, Plaintiff worked a schedule of six days per week, with only one day off of work per week. Plaintiff's work schedule increased

by August, 2015 and in August 2015, Plaintiff took only two or three days off from work during the entire month of August, 2015. Plaintiff left employment with Defendants on or about September 1, 2015. In May 2016, Plaintiff returned to work for Defendants at Hopper's Crab House restaurant in her same capacity as a restaurant server. Plaintiff's regular work schedule in 2016 was consistently working five or six days per week from late May 2016 (Memorial Day) until approximately July 2, 2016.

17. The amount of hours worked each day by a server, such as the Plaintiff, depends on where they are assigned: (i) at "Sneaky Pete's," a restaurant/bar situated at the end of a dock with additional seating on boats attached to the dock; (ii) inside the main restaurant building; or (iii) outside of the main restaurant building on the deck.

18. Generally speaking, servers would work in the dining area of "Sneaky Pete's" one, two or even three times per week. When working at Sneaky Pete's, servers were required to be present at work, performing preliminary activities, before the shift officially started at 11:00 am. At the close of business, servers would not leave Sneaky Pete's until 10:00 pm to 12:00 am. Servers performing work at Sneaky Pete's were required to perform work such as sweeping the boats, emptying the trashcans, hosing the boats down, and squeegeeing the water down the drains. At that point, a manager would have to check out the boats and other dining areas, and then servers could go up to the bar to close/cash out with a bartender.

19. If assigned inside the main restaurant building, a server would perform work from approximately 3:00 pm performing preliminary activities, start serving tables around 4:00 pm, and leave sometime between 10:00 pm to 11:00 pm, depending on business conditions.

20. If assigned to serve tables located outside (on the main restaurant deck), the Plaintiff and other servers' daily work hours would begin from approximately 2:00 pm to either 11:00 pm or

midnight (and even later), depending on business conditions. On work days that were holidays, the restaurant opened even earlier for service to patrons beginning around 2:00 pm and so servers assigned to handle inside tables beginning around 2:00 pm and servers assigned to outside deck tables were required to begin work around noon.

21.     Servers who were assigned to serve the deck area outside of the main restaurant were required to come to work two hours early, even though the restaurant did not open the outside deck for earlier service to patrons. The restaurant opened both the inside tables and the outside tables for service to patrons at the same time, typically around 4:00 pm. Servers assigned to serve outside deck tables were required to start work earlier at approximately 2:00 pm, in order to perform the restaurant's regular daily preparatory tasks prior to the restaurant's opening for service on or about 4:00 pm. Servers assigned to serve inside the main restaurant were required to start work at approximately 3:00 pm, also to perform daily preliminary preparatory tasks. Such preparatory tasks, both for the inside and the outside of the restaurant, included such things as cutting lemons, preparing salad dressings, cleaning tables, wiping the booths down, maintaining the bathrooms, and the like. Additionally, servers assigned to serve outside deck tables were required to stay later at work in order to do the harder and more time-consuming cleaning tasks associated with the outside deck service, including using a knife to poke all pieces of crab shell that had fallen from tables and lodged in between the decking boards and using power washers on the deck. Thus, servers assigned to serve outside deck tables, in addition to being required to come in two hours earlier to work, were required also to stay later to work – normally until at least 11 pm, and even to 1:00 am at times. All of this would have to be checked by the closing manager with a flash light and every piece of crab shell had to be gone before servers could leave for the night.

22. Servers were also required to perform other manual labor duties such as cleaning out the walk-in freezers, the refrigerators and cleaning the game room (which did not even have dining tables).

23. In 2015, Defendants maintained a practice consistently of having a restaurant hostess clock-in the time for all servers (including for servers assigned to work at Sneaky Pete's). Servers, including Plaintiff, would pick up their time card each day and give it to the hostess to clock them in when, upon information and belief, tables were sat. In fact, Plaintiff recalls being told by management that servers would not be paid for work prior to the restaurant actually opening for service because it would encourage servers to arrive earlier than necessary. The hostess also would clock out each server each shift. The hostess clocked out servers once tables were no longer being sat (as opposed to when the server completed all work and was ready to leave for the evening). Therefore, in 2015, Plaintiff never once clocked herself in or out; and when Plaintiff worked the outside deck tables, the hostess would have clocked-out Plaintiff long before Plaintiff actually finished her work.

24. The practice of having the hostess clock in a server only when the restaurant was sitting patrons and having the hostess clock out servers when the restaurant was no longer sitting patrons served to deliberately reduce the hours recorded by Plaintiff and was a scheme to defraud the Plaintiff and other servers from all of the pay that they were due for their preliminary and post-liminary work. Defendants knew or should have known that their pay practices, at least prior to 2016, were unlawful and cheated their employees out of proper wages.

25. When Plaintiff returned to work in late May 2016, Defendants' practice of having the hostess clock in and clock out the servers had changed. In 2016, the servers, including Plaintiff, clocked in and out of work each day, themselves.

26. In both 2015 and 2016, Defendants required servers, including Plaintiff and other similarly situated server employees, to hand over their tips earned each day to the restaurant's closing bartender, who would then hand over all tips to the restaurant manager. Servers, including Plaintiff, were required to fill out paper sheets of total tip amounts. The manager would then divide the tips into envelopes. Five percent (5%) of the tips were purportedly tipped out to food runners, but upon information and belief, tips were retained by management. Plaintiff at all times complied with Defendants' practice as described herein.

27. Additionally, in both 2015 and 2016 Defendants required servers, including Plaintiff, to pay the cost to the restaurant of any of their customers' walkouts. Plaintiff at all times complied with Defendants' practice as described herein.

28. Defendants paid employees, including hourly tipped servers such as Plaintiff and others similarly situated, by paycheck issued biweekly. Of those biweekly paychecks that Plaintiff did receive from Defendants, Defendants issued the paychecks by hand delivery at the restaurant to employees and failed and refused to mail the paychecks to employees.

29. Upon information and belief, Defendants purported to pay Plaintiff and other similarly situated hourly tipped employees at a regular rate of $3.63 per hour, but did not pay for all hours worked and did not pay overtime at proper rates and amounts.

30. Defendants intentionally sought to obscure their hours shaving scheme by not providing the Plaintiff and other similarly situated server employees with a copy of their paycheck. For example, Plaintiff never received her paychecks for work she performed during the latter half of her employment by Defendants in 2015 – *i.e.*, approximately mid-July, 2015 through September 1, 2015; and for the entirety of her employment by Defendants in 2016 – *i.e.*, from approximately late May, 2016 (Memorial Day) through approximately July 2, 2016.

31. Specifically, Plaintiff and others similarly situated were not properly paid in 2015 for all hours that she worked, including overtime hours, because the hostess consistently clocked Plaintiff and other similarly situated server workers at in at times well after work had begun and before work had been completed.

32. Because Plaintiff received no paychecks in all of 2016 detailing amounts paid to her or the hours of her work, despite her requests to management for same, Plaintiff is unable to confirm whether she was paid *any* wages in 2016, let alone determine whether she was properly paid wages for all hours worked. However, upon information and belief, Plaintiff alleges that Defendants' shaving of hours and/or underpayment of wages continued in 2016 even after servers clocked themselves in and out.

33. Upon information and belief, Plaintiff worked in excess of forty (40) hours per week for which she was not paid for all of her overtime hours worked.

34. Defendants have violated the FLSA, the MWHL, and MWPCL insofar as they:

(a) Failed to inform Plaintiff and other similarly situated server employees, of the tip credit provisions of 29 U.S.C. § 203(m) and Md. Ann. Code LE Art. § 3-419, thereby requiring Defendants to have paid at least $7.25/hour for each of the hours worked by Plaintiff and other similarly situated hourly tipped employees, as opposed to $3.63/hour, the lowest rate possible under the FLSA;

(b) Maintained a policy and practice of requiring Plaintiff and other similarly situated server employees to pay for business losses, such as reimbursement for tabs caused by customer walk-outs, resulting in not just the loss of the legal ability of Defendants to take a tip credit, but also resulting in unlawful wage deductions as to Plaintiff and other similarly situated server employees;

(c)     Maintained an invalid tip pool where 5% of the tips of Plaintiff and other similarly situated server employees were tipped out to non-tipped kitchen employees and to management;

(d)     Failed to properly pay working time over forty hours per week, at a rate no less than one and a half (1 ½) times the regular minimum wage, to Plaintiff and other similarly situated server employees;

(e)     Refused and failed to ensure that Plaintiff and other similarly situated server employees were paid for all hours actually worked; and

(f)     Violated the MWPCL by routinely failing to issue to Plaintiff and other similarly situated server employee a paycheck and/or a gross statement of wages earned and deductions taken.

35.     Defendants have violated the rights of the Plaintiff, and other similarly situated server employees, to be paid the full minimum wage. While the FLSA allows employers to pay less than minimum wage to employees who receive tips, 29 U.S.C. § 203(m), the employer must still pay at least $2.13/hour under the FLSA and $3.63/hour under the MWHL, and must allow the tipped employees to retain all tips (except in a valid tip pooling arrangement).

36.     Defendants were required by the FLSA and the MWHL (29 U.S.C. § 203(m) and Md. Ann Code LE art. § 3-419 (respectively)), to inform tipped employees, like Plaintiffs and others similarly situated servers, that among other things, tipped employees were entitled to retain all of their tips except in a valid tip pooling arrangement, before they could *potentially* pay $3.63 an hour to the Plaintiffs (and others similarly situated), an hourly wage which is lower than the requirements of 29 U.S.C. § 206, and half of the minimum wage as set forth in Md. Ann. Code LE art. § 3-413.

37. Defendants violated the 29 U.S.C. § 203(m) and Md. Ann. Code LE art. § 3-419 by failing to inform Plaintiff, and others similarly situated servers, that it was taking a so-called "tip credit" against Defendants' minimum wage obligations, the amount of the tip credit, or that Plaintiffs (and other tipped workers) had the right to retain all tips except in a valid tip pooling arrangements, or any of the other requirements set out by law. See 29 C.F.R. § 531.59(b). Defendants also failed to allow Plaintiff, and those similarly situated, to retain all of their tips insofar as they maintained an invalid tip pooling arrangement.

## Causes of Action

## COUNT I
### (FLSA - Failure to Pay Minimum Wage)

38. Plaintiff incorporates paragraphs 1-37 as set forth above, and states that Defendants' actions complained of herein constitute a willful violation of 29 U.S.C. § 206 (minimum wage), because Defendants have at all material times failed to pay Plaintiff, and other similarly situated server employees, the proper minimum wage rate, free and clear of deductions and in a timely manner, by: (a) refusing and failing to inform Plaintiff and others similarly situated server employees about all of the information related to Defendants' claim of a tip credit legally required to be provided by Defendants; (b) requiring Plaintiff and other similarly situated server employees to participate in an invalid tip pool; (c) refusing and failing to pay Plaintiff and other similarly situated server employees for all hours actually worked; (d) requiring Plaintiff and other similarly situated server employees to pay the cost of business losses occurring as a result of customer walkouts while Defendants nonetheless claimed a tip credit; and otherwise failing to comply with the requirements of 29 U.S.C. § 203(m) and 29 U.S.C. § 206.

39. As a result, Plaintiff and other similarly situated hourly tipped employees who opt into this lawsuit, have the legal right to receive the full minimum wage, as required by Federal law

and applicable Federal regulations.

## COUNT II
### (FLSA - Failure to Properly Pay Overtime)

40. Plaintiff incorporates paragraphs 1-39, as set forth above, and states, in addition, that Defendants' actions complained of herein constitute a violation of Section 207 of the FLSA, because Defendants willfully failed to pay Plaintiff and other similarly situated server employees overtime compensation for all times that they worked in excess of forty (40) hours per week, and willfully failed to pay overtime compensation at a wage rate of at least one and a half (1 ½) times the applicable minimum wage rate that Plaintiff and others similarly situated were entitled to receive as their regular rate of pay with Defendants.

41. As a result of Defendants' actions complained of herein, Defendants willfully violated Section 207(a)(1) of the FLSA, because Defendants failed to compensate Plaintiff and other similarly situated server employees at a proper overtime rate after application of the so-called tip credit, for hours that Plaintiff and other similarly situated hourly server employees worked in excess of forty hours in a work week at a rate of not less than one and a half (1 ½) times the applicable minimum wage as required by Federal law and Federal regulations and that Plaintiff and others similarly situated were entitled to receive as their regular rate of pay with Defendants.

42. As a result of Defendants' actions complained of herein, Plaintiff and other similarly situated server employees have failed to receive the overtime pay due to them, as required by Section 207 of the FLSA, 29 U.S.C. § 207.

## COUNT III
### (MWHL - Failure to Pay Minimum Wage)

43. Plaintiff incorporates paragraphs 1-42 as set forth above, and states that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art. § 3-413 (minimum

wage), because Defendants have, at all material times, failed to pay Plaintiff the proper minimum wage rate for all hours worked, free and clear and in a timely manner, and otherwise failed to comply with the requirements of Md. Ann. Code LE Art. § 3-419.

44. As a result, Plaintiff has the legal right to receive the full minimum wage, as required by Maryland law and applicable Maryland regulations.

## COUNT IV
### (MWHL - Failure to Properly Pay Overtime)

45. Plaintiff incorporates paragraphs 1-44 as set forth above, and states that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art. § 3-420 (overtime) because Defendants have, at all material times, failed and otherwise refused to compensate Plaintiff for all hours worked in excess of forty hours a work week at a rate of not less than one and a half (1 ½) times their regular rate of pay, as computed under Md. Ann. Code LE Art. § 3-420.

46. Defendants' actions complained of herein constitute a violation of Section 3-415 of the MWHL, because Defendants failed to compensate Plaintiff at a proper overtime rate after application of the so-called tip credit, for hours worked in excess of forty hours in a work week at a rate of not less than one and a half (1 ½) times the regular and applicable minimum wage as required by Maryland law.

47. As a result, Defendants owe Plaintiff overtime wages in the amount of one and a half (1 ½) times the then-applicable minimum wage established by Md. Ann. Code LE Art. § 3-413 (minimum wage), for all work weeks she worked in excess of forty hours per week.

## COUNT V
## (MWPCL Act – Unpaid Wages)

48. Plaintiff incorporates paragraphs 1-47 as set forth above, and states that the actions of Defendants, in failing to inform the Plaintiff of the provisions of Md. Ann. Code LE art. § 3-419; alternatively, in refusing to allow Plaintiff to retain her tipped wages free and clear; alternatively, in failing to pay overtime wages when earned, including payment in proper amounts, are all separate violations of the MWPCL, Md. LE Art. § 3-502(a)(ii) and § 3-505(a).

49. That the MWHL further compels each covered employer and non-exempt employee to make, as part of any working agreement, a promise to pay minimum wages and overtime wages as applicable under the MWHL.

50. That impliedly, by operation of law, Plaintiff was entitled to be paid statutory minimum wages and overtime wages by Defendants which have gone unpaid.

51. That there are no bona fide disputes between the parties as to the right of the Plaintiff to receive minimum wages or overtime wages. That there are no bona fide disputes between the parties as to the right of the Plaintiff to retain her tips and to be paid all lawful wages for all hours worked, arising from her employment with Defendant. Defendants knew, or should have known, that it is a covered entity under the MWHL, and that Plaintiff performed work as employees for which she was not properly compensated.

52. Defendants also knew or should have known that they were required under the MWPCL to report to the Plaintiff her gross earnings and deductions from those gross earnings, Md. LE Art. § 3-504(a)(2); and failed to do so as part of a scheme to cover up and cheat Plaintiff of her hard-earned wages by concealing an underpayment/hours shaving scheme.

53.     Plaintiff is thus entitled under MWPCL, Md. LE Art. § 3-507.2 to an award of treble damages and attorneys' fees with respect to the wages, i.e. the MWHL-mandated minimum wages and overtime wages, that have gone unpaid.

### Prayer

Based on the foregoing allegations, Plaintiff respectfully requests that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorney's fees and costs; and in support thereof, requests this Honorable Court to issue the following Orders:

(a)     Certify this action as a collective action pursuant to 29 U.S.C. § 216(b), and (i) compel Defendants to provide all material contact information, including email addresses, for potential opt-in Plaintiffs who performed work as restaurant servers receiving less than the full minimum wage ($7.25/hour); (ii) issue appropriate Notices as requested in Plaintiff's Motion for Conditional Certification; (iii) supervise the maintenance of this FLSA collective action; and (iv) supervise and enter appropriate orders allowing this matter to be tried as an FLSA collective action.

(b)     Order Defendants to pay Plaintiff (and all similarly situated employees of Defendant who file an opt-in notice in this litigation), all unpaid minimum wage payments and overtime premiums determined by the Court to be due and owing, under the FLSA, MWHL, and MWPCL, as well as a sum of liquidated damages in an amount equal to the amount of any unpaid minimum wage payments and overtime premiums awarded to Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), pursuant to the FLSA;

(c)     Order Defendants to pay the Plaintiff (and all similarly situated employees of Defendant who file an opt-in notice in this litigation), an amount equal to triple the amount of

unpaid minimum wages owed Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), under the MWHL, after an accounting has been performed, as Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), is entitled to such damages under MWPCL;

(d)     Award Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), her attorneys' fees and costs in pursuing this action;

(e)     Award Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), interest on any sums determined due and owing from Defendants, including pre-judgment interest on attorneys' fees and costs in pursuing this action;

(f)     Grant Plaintiff (and all similarly situated employees of Defendants who file an opt-in notice in this litigation), any additional relief that the Court deems appropriate and just.

Respectfully submitted,

*[signature]*

Howard B. Hoffman, Esq.
Attorney at Law
Federal Bar No. 25965
600 Jefferson Plaza, Suite 304
Rockville, MD 20852
(301) 251-3752
(301) 251-3753 (fax)

Attorney for Plaintiff

## Jury Demand

The Plaintiff, by her attorney, hereby demands a jury trial as to all issues triable by a jury.

*/s/ Howard B. Hoffman*
Howard B. Hoffman