CASEY KNOX                       :

                              :

                              :

     v.                          :     Civil No. CCB-17-1853

                              :

                              :

HOOPER'S CRAB HOUSE, INC., et al.   :

                              :

## MEMORANDUM

The plaintiffs in this case worked as servers for defendant Hooper's Crab House ("Hooper's"), a seasonal restaurant located in Ocean City, Maryland. They have sued Hooper's, its owners, and its managers under the federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl., §§ 3-501, *et seq.* Before the court is the plaintiffs' motion for conditional certification of an FLSA collective action and for the court's assistance in identifying and notifying similarly situated employees. For the reasons that follow, the motion will be granted.

## BACKGROUND

Hooper's Crab House is a seasonal restaurant that operates from approximately early May through October in Ocean City, Maryland. It hires approximately 70-90 seasonal employees to fill various roles in the restaurant every summer season. (Brady Dep. Tr. at 11-12, ECF No. 38-1.)[1] During the rest of the year when the restaurant is closed, Hooper's employs only two individuals, Ryan Intieri as General Manager and Patrick Brady as Manager. (*See id.*; Knox

---

[1] Only excerpts of the deposition transcript were provided as an exhibit, so the transcript's internal pagination is non-consecutive. All citations will refer to the ECF pagination.

Decl. ¶ 4, ECF No. 31-8.) The facts stated below come primarily from the plaintiffs'

declarations, which they attached as support for the pending motion. (*See generally,* Decls., ECF

Nos. 31-2 – 31-12.)

The plaintiffs worked as servers at Hooper's at various points from 2014 through 2017.

Many employees worked in multiple roles at the restaurant, including as food runners,

expediters, hostesses, "good-bye girls," bartenders, and in the souvenir shop. The plaintiffs

allege that when they worked as servers, the defendants had in place a common scheme to avoid

paying them for the full number of hours they worked and to avoid overtime payment. These

policies included requiring servers to arrive early to prepare the restaurant for opening and to

stay late to clean the restaurant. Hooper's has several different dining areas. The type of

preparation and cleaning work required of servers for each shift depended on which area of the

restaurant they were assigned to work, with assignments to the outdoor dock area requiring the

most extensive work. Nonetheless, the servers were responsible for substantially the same type

of work every shift.

The plaintiffs allege that in 2014 and 2015 they did not manage their own time cards;

instead, the hostess would clock them in and out according to when patrons were seated at tables

in their section. This alleged "time shaving" practice ensured servers' recorded hours did not

include the time worked before patrons were seated and after patrons left. One plaintiff also

stated that these same timekeeping policies applied to bartenders as well.[2] In 2016, Hooper's

ended the practice of having hostesses clock servers in and out, but at least one plaintiff reported

working in excess of 80 hours in a two week period without receiving an overtime wage.

Servers were paid using the tip credit permitted under FLSA.  They received a reduced

hourly wage and earned tips from patrons that brought their hourly wage up to the minimum

_____

[2] *See* Grim Decl. ¶ 3-6, ECF No. 31-11.

required by law. Hooper's instituted a tip pooling arrangement under which servers pooled their

tips and portions were allocated to bartenders, food runners, and busboys. The plaintiffs allege

that Hooper's tip pooling arrangement was not valid because it provided tips to staff members or

employers who should not have been included, depriving servers of tips to which they were

entitled. Plaintiffs who also worked as food runners claim the amount they received in tips

during these shifts was below what it should have been if tips were properly allocated. Finally,

they allege that certain policies may have reduced their wages below minimum wage, such as

requiring wait staff to purchase certain equipment and to pay the bills of customers who left

without paying ("walk outs").

Plaintiff Casey Knox initially filed this suit on July 5, 2017. Since then, sixteen additional

plaintiffs have opted-in. The plaintiffs filed this motion to certify a class on October 16, 2017.

They request the court certify a class of:

> all servers and bartenders from the three year period preceding the date of the filing of
>
> this lawsuit (July 5, 2014) through the date that this Motion is granted, who have worked
>
> for Defendants 'Hooper's Crab House' restaurant in Ocean City, Maryland and received
>
> wages of less than $7.25/hour.

(Mot. Certify Class at 10, ECF No. 31.) Plaintiffs also proposed a notice to be sent to potential

class members via e-mail, mail, and text message, with the possibility of additional outreach via

GroupMe[3] and social media advertising to reach employees who may not reside in the United

States.

Defendants filed their response in opposition on October 31, 2017. Plaintiffs filed their

reply on November 13, 2017 and filed a revised reply including deposition testimony from

---

[3] GroupMe is a mobile messaging application allegedly used by the defendants to communicate with their employees.

Patrick Brady on January 9, 2018.

## ANALYSIS

Under the FLSA, a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). After the initial complaint is filed, other similarly situated employees may become party plaintiffs by giving "consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Thus, § 216(b) "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008). "When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). "In the first stage, commonly referred to as the notice stage, the court makes a 'threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to the putative class members would be appropriate.'" *Id.* (quoting *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010) (some internal quotation marks omitted)). "In the second stage, following the close of discovery, the court conducts a 'more stringent inquiry' to determine whether the plaintiffs are in fact 'similarly situated,' as required by § 216(b)." *Id.* (citation omitted). Thus, the central question here is whether the plaintiffs have proffered enough for the court to make the threshold determination that they are similarly situated to a group of potential plaintiffs. Similarly situated does not mean identical. *Id*. "Rather, a group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law." *Id.* To meet their burden at this stage, the plaintiffs must make "a relatively

modest factual showing" to that effect. *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014) (internal quotation marks omitted). "Mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000). Employees cannot reasonably be expected, however, to have evidence of a stated policy of refusing to pay overtime. *Quinteros*, 532 F. Supp. 2d at 772.

The statute of limitations to bring a claim under the FLSA is two years after the cause of action accrues, or three years if the violation is willful. 29 U.S.C. § 255(a). When there is conflicting evidence, "the issue of willfulness is an issue of material fact to be determined at trial." *Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 891 (D.Md. 2011).

### 1. The Scope of the Class to be Certified

In this case, the plaintiffs have made a modest factual showing that they are similarly situated to other servers and were subject to a common policy, scheme, or plan, that violated the law. According to their declarations, the plaintiffs were subject to the same "time shaving" practice through which the defendants under-recorded the hours the plaintiffs worked, resulting in underpayment and avoidance of overtime pay. Servers were required to allow the hostess or "goodbye girl" to clock them in and out in 2014 and 2015, and the hours recorded did not include the preparation and cleanup work that happened outside the restaurant's operating hours. The plaintiffs worked in the same position, as servers; were subject to the same pay structure; and were subject to the same alleged "time shaving" policies in 2014 and 2015 and the same alleged failure to pay overtime wages in 2016. All servers also were subject to the same tipping pool practice, the same policies regarding purchase of business supplies, and the same policies regarding payment of "walkout" bills. Taken together, these facts indicate that the servers were

subject to a common policy, scheme, or plan that deprived them of wages for all hours worked

and overtime wages to which they were entitled. *See Butler*, 876 F.Supp.2d at 569 (granting

motion for conditional certification of satellite dish installation technicians where the plaintiffs

provided evidence of a policy to "suppress overtime" and require "uncompensated pre- and post-

shift work"); *Camper*, 200 F.R.D. at 520-21 (granting conditional certification for a class of

employees who were subject to "a company-wide policy regarding the use of time clocks" at one

location where supervisors were aware of uncompensated work).

The defendants argue that the plaintiffs are not similarly situated because only some of

the opt-in plaintiffs submitted affidavits, and the affidavits that were filed include discrepancies

among them. They also argue that certification should be denied due to manageability. But

plaintiffs are not required to be identical to be considered similarly situated. Further, this court

has granted conditional certification in cases with far fewer than the eleven affidavits submitted

in support of this motion for conditional certification. *See Randolph*, 7 F.Supp.3d 56, 575-77

(granting motion for conditional certification supported by two plaintiffs' affidavits and other

discovery documents); *Robinson v. Empire Equity Group, Inc.*, 2009 WL 4018560 at *3-4 n.27

(D. Md. Nov. 18, 2009) (granting motion for conditional certification supported by five

plaintiffs' affidavits).[4] As discussed above, the plaintiffs have alleged sufficient facts

demonstrating a common policy or scheme to meet the modest factual showing required. The

issues specific to each server regarding the number of unpaid hours worked or for which they

were potentially underpaid are insufficient to defeat conditional certification. *See Robinson*, 2009

WL 4018560 at *3.

The defendants also argue there is insufficient support to prove that policies requiring

employees to purchase materials and cover walk-outs reduced the plaintiffs' wages below

---

[4] Unpublished opinions are cited only for the soundness of their reasoning, not for any precedential value.

minimum wage. At this early stage, the factual allegations in the affidavits are sufficient to warrant conditional certification. *Camper,* 200 F.R.D. at 519. If, after discovery, these allegations are unsupported, the defendants can move to decertify the class or for summary judgment on these claims, as appropriate.

Finally, the defendants argue that the certified class should be limited to servers to whom the alleged policies were applied, rather than all servers employed during the relevant time period. The plaintiffs allege that these policies were applied to all servers, so the defendants' distinction is without meaning. The class will include all servers.

The class definition proposed by the plaintiffs includes bartenders. The plaintiffs have not advanced any arguments specifically addressing the inclusion of the bartenders in the class. They did, however, include a declaration from Abigail Grim, who worked as a bartender. She states that the same timekeeping policies applied to servers also applied to bartenders. (*See* Grim Decl. ¶ 3-6, ECF No. 31-11.) This declaration is sufficient to conclude, conditionally, that bartenders were similarly situated to servers and subject to the same common policy or scheme to deprive them of wages and overtime wages earned. They will be included in the class certification.

### 2. Methods and Content of Court-Assisted Notification

The plaintiffs requested court assistance in notifying potential class members via email, mail, and text message. The court will not order more extensive notification than is necessary to reach potential class members. *See Arnold v. Acappella,* LLC, 2016 WL 545451 at *4 (D. Md. Sept. 29, 2016) (declining to order production of class members' telephone numbers absent showing of "special circumstances to necessitate such production") (citing *McFeeley v. Jackson St. Entm't, LLC*, 2012 WL 5928902 at *5 n.2 (D. Md. Nov. 26, 2012); *Arevalo v. D.J.'s*

*Underground*, 2010 WL 4026112 at \*2 (D. Md. Oct. 13, 2010)). Initially, the court will only order notice via email and mail. If the initial notice receives a large number of undeliverable responses, the court may order a second round of notice via text message or other method to ensure potential class members are notified. Additionally, the defendants will be given three weeks to compile the names, addresses, and e-mail addresses of conditional class members. The opt-in period for class members will be 75 days, as requested by the plaintiffs. *See Butler*, 876 F. Supp. 2d at 575 (llisting ninety day opt-in periods authorized by numerous courts).

The plaintiffs filed a proposed notice to class members and the defendants did not propose an alternative notice. They did, however, raise a number of objections to the plaintiffs' proposed notice. The plaintiffs appear to have conceded to at least some of these objections in their reply, while also raising new concerns about a potential class member named "Inna" who may be aligned with defendants. (*See* Reply Mot. Certify Class at 14, ECF No. 38.) The parties will be directed to confer on the content and dissemination of the notice, including the circumstances under which it will be provided to Inna. Any remaining disagreements will then be resolved by the court.

A separate order follows.


__2/6/2018_____                                    _____/s/_____
Date                                                              Catherine C. Blake
                                                                   United States District Judge

8