IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Casey Knox** | * | |
| *On behalf of herself and others similarly situated* | * | |
| | * | |
| **Plaintiffs** | * | |
| v. | * | Case No. 1:17-cv-01853-CCB |
| **Hooper's Crab House, Inc., et al** | * | |
| **Defendants** | * | |
| _____ / | | |

## JOINT MOTION FOR ORDER PRELIMINARILY APPROVING SETTLEMENT AGREEMENT AND SETTLEMENT CLASS PURSUANT TO FED.R.CIV. 23(e)

Plaintiff, Casey Knox, on behalf of herself and others similarly situated, together with Defendants, Hooper's Crab House, Inc., Pete Shepard, Royette Shepard, Patrick Brady, and Ryan Intrieri, jointly move this Court for an Order preliminarily approving a Fed. R. Civ. P. 23 Settlement Class under the Maryland Wage/Hour Law, Md. Ann. Code LE art. § 3-401 *et seq.* and Maryland Wage Payment and Collection law, Md. Ann. Code LE art. § 3-501 *et seq.*

## II. BACKGROUND

Plaintiff Knox brought this Civil Action, on or about July 5, 2017, in which she alleged that the Defendants violated the Fair Labor Standards Act ("FLSA"), the Maryland Wage/Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL") by failing to properly pay servers the minimum and overtime wages as required by those laws. The Complaint sought recovery of minimum wages, overtime wages, liquidated damages in the amount equal to unpaid minimum and overtime wages, statutory damages in the amount of three times the

unpaid wages, and pre- and post- judgment interest, costs, reasonable attorneys' fees, and conditional certification of a class pursuant to 29 U.S.C. § 216(b).

Subsequent to the initiation of the lawsuit, thirteen (13) individuals joined the case as FLSA party Plaintiffs. A Motion for Conditional Certification of FLSA Collective Action was then filed and granted (ECF Doc. 31, 40), resulting in a total of forty-nine (49) FLSA Opt-In Plaintiffs.

On July 20, 2018, Plaintiff Knox sought leave to file a First Amended Complaint, principally to add Defendants and also add MWHL and MWPCL claims pursuant to Fed. R. Civ. P. 23.

Beginning in early October, the parties and their attorneys met several times for mediation before the Hon. J. Mark Coulson. The parties, with the desire to resolve this collective and putative class action, submit this Motion as part of their request that the Court preliminarily certify a settlement class of the following individuals:[1]

> Any current or former server who performed work at "Hooper's Crab House" between July 5, 2014 and December 31, 2017, who during this period was paid less than $7.25/hour, when working less than forty (40) hours in a work week and/or who during this period was paid less than $10.88/hour, when working more than forty (40) hours in a work week.

Aside from the already-conditionally approved FLSA class, the parties propose two-distinct sub-classes for settlement. First, there exists a group of servers who performed work at "Hooper's Crab House" between July 5, 2014 and December 31, 2015 referred to herein as the "Maryland 14/15 Wage Sub-Class." Second, there exists a group of servers who performed work at "Hooper's Crab House" between January 1, 2017 and December 31, 2017, referred to herein as the "Maryland 16/17 Wage Sub-Class."

---

[1] The Parties submit this Motion without prejudice to any position that they may later be forced to take in the event that this Motion is denied and that the litigation continues.

2

Because the Court has already conditionally certified a class pursuant to 29 U.S.C. § 216(b), the purpose of the instant Motion is to preliminarily approve a Rule 23 Settlement Class. The final approval of the § 216(b) FLSA class shall await final approval of the Parties' settlement agreement.

### III. STANDARD OF REVIEW

**A.   Preliminary Approval and Certification of Rule 23 Settlement Class**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement.

"If not a ground for certification *per se*, certainly settlement should be a factor, and an important factor, to be considered when determining certification." In re A.H. Robins Co., Inc. 880 F.2d 709, 740 (4th Cir. 1989) *abrogated by* Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997). The Supreme Court has affirmed that "[s]ettlement is relevant to a class certification." Amchem Products, 521 U.S. at 619. However, certification of a class for purposes of settlement must satisfy the pertinent Rule 23 requirements. Id. "[W]hen a district court is presented with a class settlement agreement, the court must first determined that 'the requirements for class certification under Rule 23(a) and (b) are met, and must separately 'determine that the settlement is fair to the class under [Rule] 23(e).'" In re NFL Players' Concussion Injury Litig., 775 F.3d 570, 581 (3rd Cir. 2014) (quoting Sullivan v. DB Invs., Inc., 667 F.3d 273, 319 (3rd Cir. 2011) (en banc)) (alteration in original).

"The exact process a district court should follow when presented with a 'settlement class' is not prescribed by Rule 23." In re NFL Players' Concussion Injury Litig., 775 F.3d at 581. "A settlement class 'offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification.'" Id. (quoting In re

3

Cmty. Bank of N. Va., 418 F.3d 277, 299 (3rd Cir. 2005). "A district court's management of a settlement class is different from a litigation class in that the court is acting as fiduciary 'to protect unnamed members of the class.'" Id. (quoting Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3rd Cir. 2010)); In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991) ("The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations."). "These differences aside, 'the 'settlement only' class has become a stock device.'" Id. (quoting Amchem, 521 U.S. at 618).

In re NFL Players' Concussion Injury Litig., 775 F.3d at 581, described the *preliminary* process for approving a settlement class as follows:

> Section 21.632 of the Federal Judicial Center's *Manual for Complex Litigation* (Fourth) explains that the "[r]eview of a proposed class action settlement generally involves two hearings."[FN16] *Manual for Complex Litigation § 21.632 (4th ed. 2004)* (hereinafter "*Manual for Complex Litigation* "). In the first hearing, or "preliminary fairness review," "counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." *Id.* In the context of a "preliminary fairness review" of an uncertified settlement class, § 21.632 provides that "the certification hearing and preliminary fairness evaluation can usually be combined." *Id.* When combining a certification and preliminary fairness hearing:
>
>> "The judge should make a *preliminary determination* that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). *See* section 21.22. If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* (emphasis added).
>
> This case management technique for uncertified settlement classes makes sense, particularly from a notice perspective. Rule 23(e)(1) requires the district court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e)(1). The principal purpose of this provision is "to ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement." 2 *McLaughlin on Class Actions* § 6.17 (10th ed. 2013). This notice can be sent to putative class members before the district court issues a certification order or, "[i]n cases in which a litigation class has already been certified ... the notice of settlement may also be sent to ... opt-outs to give them an opportunity to rejoin the class." *Id.*

4

> The *preliminary* analysis of a proposed class is therefore a tool for settlement used by the parties to fairly and efficiently resolve litigation. In the context of a Rule 23(b)(3) opt-out class, this affords defendants the opportunity to determine whether there will be sufficient participation in the class before certifying the class and dispersing any settlement fund. This also allows the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims.

In re NFL Players' Concussion Injury Litig., 775 F.3d at 581 (citation and footnote omitted).

As this Court stated in Decohen v. Abbassi, LLC, 299 F.R.D. 469, 479 (D. Md. April 17, 2014): "To determine if the proposed terms are fair, the court should consider: '(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation .' " Id. (citation omitted).

To determine if the settlement is adequate, the Court should consider: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. See Decohen, 299 F.R.D. at 479.

As stated in Decohen, there is a " 'strong presumption in favor of finding a settlement is fair.' " Decohen, 299 F.R.D at 479 (quoting Lomascolo v. Parsons Brinckerhoff, Inc., 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). "Because a settlement hearing is not a trial, the [C]ourt's role is more 'balancing of likelihoods rather than actual determination of the facts and law in passing upon ... the proposed settlement.' " Id. (quoting Lomascolo, 2009 WL 3094955, at *10.

5

## IV. ANALYSIS

### A. Preliminary Rule 23 Analysis

"A class action will be certified only if meets the four prerequisites identified in Rule 23(a) and also fits within one of the three subdivisions of Rule 23(b)." Singleton et al. v. Domino's Pizza, LLC, 976 F.Supp.2d 665, 674 (D. Md. 2013).

#### (1) Rule 23(a) Requirements

**i. Numerosity**: Although there is no specific rule on how many members a class must have, the Fourth Circuit has indicated that a class with over thirty members satisfies the numerosity requirement. Williams v. Henderson, 129 Fed. Appx. 806, 811 (4th Cir. 2005). The servers that make up the proposed class in this case total over 300. Accordingly, this requirement is satisfied.

**ii. Commonality**: Commonality is satisfied if only one legal or factual issue is shared by all class members. Fisher v. Virginia Elec. & Power Co., 217 F.R.D. 201, 212 (E.D. Va. 2003). This requirement is met where a defendant engaged in a common course of conduct. Id. In this case, there are common allegations that relate to the manner in which the Defendants took a tip credit, took deductions from tips, failed to properly pay overtime, and failed to properly pay minimum wage, including by deducting from a sub-minimum wage through a nibbling/sipping fee and credit card transaction fees. For example, the First Amended Complaint alleges that the 2014-2015 servers are alleged to have performed work as a server but were not paid for all hours worked. (ECF Doc. 95-1, pg. 19). These servers make up the proposed Maryland 14/15 Wage Sub-Class. The First Amended Complaint also alleges that servers who worked in 2016-2017 servers were not paid the full minimum wage because they were subjected to a "nibbling" or "sipping" fee of $.40/hour. (ECF Doc. 95-1, pg. 20).

6

Thus, the legal and factual issues concerning the claims raised in this case are common to all servers who are members of each (or both) of the aforementioned proposed sub-classes, with the amount of damages being the only difference.

   **iii.**  **Typicality**: To show typicality, the representative plaintiff "must suffer the same injury as the class members." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982). For typicality to be satisfied, the representative party's interest in prosecuting his/her own case must simultaneously tend to advance the interests of the absent class members. Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). In this case, the claims of the lead Plaintiff are the same as the claims of each of the proposed sub-classes. For example, the Class Representative, Plaintiff Knox, alleges that she worked uncompensated hours in years 2014 and 2015, and was similarly subjected to the "nibbling" fee. Thus, a sufficient relationship exists between the injury to the lead Plaintiff and the conduct affecting the sub-classes. Singleton, 976 F.Supp.2d at 676.

   **iv.**  **Adequacy**: Rule 23(a)(4) requires that the "named [Plaintiff] will fairly and adequately protect the interests of the class." Simpson v. Specialty Retail Concepts, Inc., 149 F.R.D. 94, 102 (M.D.N.C. 1993). This requirement is met if it appears that (1) the Lead Plaintiff has interests in common with, and not antagonistic to, the proposed class's interest; and (2) the Lead Plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation. Id.; Decohen, 299 .F.R.D. at 477; Singleton, 976 F.Supp.2d at 676. In this case, the Plaintiff Knox and the putative Class satisfy both prongs of the "adequacy" test. The docket of this case establishes and demonstrates that Plaintiff Knox and Class Counsel have vigorously prosecuted the case on behalf of the class. Plaintiff Knox's interests are aligned with those of the class members and Plaintiff shares an interest with class members in establishing that Defendants' policies during the relevant periods violated the MWHL and MPWCL. Finally, and as discussed

in greater detail in Section C, *infra*, Class Counsel are qualified, experienced and competent, as demonstrated through the course of this litigation and other unpaid wage litigation. Decohen, 299 F.R.D. at 477 ("class counsel have shown by their vigorous prosecution of this litigation for three and a half years that they are qualified, experienced, and able to conduct the litigation.").

Accordingly, the Rule 23(a) perquisites have been met.

### (2) Rule 23(b)(3) Requirements

For purposes of this Motion, the parties rely on Rule 23(b)(3), which requires that the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "Certification under Rule 23(b)(3) is appropriate when 'settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort and expense' and promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." Decohen, 299 F.R.D. at 477 (citations omitted).

**i.  Common Questions of Fact Predominate**: "The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations." Singleton, 976 F.Supp.2d at 677. "Inasmuch as the predominance test focuses on the nature of the claims asserted, common questions predominate regardless of any difference in the amount of damages recoverable by individual class members." Temporary Services, Inc. v. AIG, Inc., 2012 WL 2370523, *4 (D.S.C. June 22, 2012). In this case, the claims of the Representative Plaintiff and the members of the proposed sub-classes arise from the allegations that the Defendants took failed to properly pay for all hours worked (Maryland 14/15 Wage Sub-Class) and failed to properly pay the minimum wage based on the taking of a "nibbling"

8

fee (Maryland 16/17 Wage Sub-Class). The Complaint alleges no conduct or claims particular to the Plaintiff that were not practiced upon every member of the proposed sub-classes. Accordingly, the issues of fact arising from Defendants' conduct predominate over any individual issues, making class treatment appropriate here. See Temporary Services, Inc., supra.

    **ii.**  **Common Questions of Law Predominate**: In this case, Plaintiff Knox and the members of the proposed sub-classes all share common questions of law, insofar as the case involves the application of the MWHL and MWPCL. There are no variations in either law, with respect to their claims, that may defeat predominance.

    **iii.**  **A Class Action Is Superior To Other Available Methods To Adjudicate This Action**: In this case, a class action settlement is superior because if a considerable number of servers pressed individual successive claims against the Defendants, it would be cost prohibitive and could threaten over time the ability of the Defendants to not only defend themselves but to pay settlements or judgments that may be entered in favor of the individuals. Thus, a class action has the benefit of allowing Defendants to generally address the claims of all interested persons. Moreover, a class action has the benefit of providing court-sanctioned notice to interested individuals and providing them with the information necessary to make an informed decision concerning litigation against the Defendants. Accordingly, certifying this case as a class action for settlement purposes is a superior method to notify individuals who may have similar claims, and adjudicate, resolve, and settle those claims against the Defendants.

**C.**  **Appointment of Class Counsel**

  Plaintiff Knox, as proposed Class Representative, on behalf of the putative Class, seeks the appointment of Howard B. Hoffman, Esq. of Hoffman Employment Law, LLC, Bradford W. Warbasse, Esq., Attorney at Law, and James E. Rubin, Esq. of The Rubin Employment Law Firm, P.C., as class counsel. In determining whether to appoint Class Counsel, the Court must consider

(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

The evidence in this case demonstrates that Class Counsel would satisfy their duty to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). In particular, Class Counsel has interviewed witnesses and otherwise familiarized themselves with the Defendants' operations and potential defenses through discovery. Moreover, Class Counsel possess more than 50 years of combined years of experience with class actions, complex litigation, and actions arising under employment laws. Class Counsel practice extensively in Federal Court, and the litigation and negotiations in this has left Class Counsel well versed in the substantive statutory and common law that gives rise to this case. Finally, Class Counsels' law firm and practices are well-established and possess the resources to prosecute a large class action. However, because this Motion is for the purposes of certifying a settlement class, the level of resources that counsel will commit to represent the class "is less applicable than it otherwise would be." Temporary Services, Inc., 2012 WL 2370523 at *6.

### D. Preliminary Approval of the Class Settlement

The Parties seek preliminary approval of the Settlement Agreement, attached as Exhibit 1. "Preliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." Temporary Services, Inc., 2012 WL 2370523 at *6.

In this case, the proposed Settlement Agreement is entitled to a presumption of fairness because it is the product of informed, non-collusive negotiations by experienced counsel. The settlement has no obvious deficiencies and does not subject a single class member to any undue burden. Moreover, the Settlement Agreement provides for a substantial recovery to the Class, without improperly granting preferential treatment to the Class Representative.

#### (1) Specific Terms of Proposed Settlement

First, in exchange for a narrowly drafted release of claims, Plaintiff Knox, FLSA Opt-In Plaintiffs and Maryland 14/15 Wage Sub-Class Members are entitled to double (2.0) damages based on total hours worked as determined by Defendants' wage and hour records. For Maryland 14/15 Wage Sub-Class Members who file a Settlement Claim and Release of Claims Form (Exh. 1-A), their hours will be increased by twenty percent (20%). (Exh. 1; pg. 10). Payment amounts are based entirely on the number of hours worked by individuals, with the Maryland 14/15 Wage Sub-Class getting a twenty percent (20%) increase to their hours to compensate for the lack of time cards in light of the "shaved hours" claim.

Second, in exchange for a narrowly drafted release of claims, Maryland 16/17 Wage Sub-Class Members will receive actual compensatory damages (1.0) based on total hours worked as

11

determined by Defendants' wage and hour records. The difference in formulas between the sub-classes is due, in part, to the nature of the very specific claim that the nibbling fee deductions violated the MWHL, and the potential risks and complexities surrounding this "meal deduction." Regardless, a resolution of individualized damages should be a mathematically certain exercise.

Second, the Settlement Agreement provides for modest service payments (also referred in certain cases as "incentive awards" or "service fees") to Plaintiff Knox and eleven (11) FLSA Opt-In Plaintiffs who took an active role in the case. Plaintiff Knox and FLSA Opt-In Plaintiffs Betz, Blood, Bowers, Carite, Grim, Hudson, Miller, Parker, Rinaldi, T. Shaver, and Witt will each receive an amount representing an additional 0.1x their damages. These service payments are reasonable in light of the fact that the service payments operate to compensate for any damage to reputations, reduced career options, or compensation for service incurred in assisting counsel's investigation and discovery of the class wide claims and serving as lead Plaintiff and/or as a member of the settlement committee during the settlement conference.

Third, fees and costs to be awarded to Class Counsel will await further negotiation between the parties, and failing that, a resolution by this Court. (Exh. 1; pgs. 16-18). As fees and costs will be negotiated separately following the conclusion of the opt-in period, or they will be decided by the Court, there is an absence of evidence of any fraud or collusion.[2]

---

[2] If a motion seeking approval of an FLSA settlement agreement demonstrates that a proposed fee award was agreed upon separately and without regard to the amount paid to the Plaintiffs, then unless there is reason to believe that the Plaintiff's recovery was somehow adversely affected by the amount of fees to be paid to the attorney, the Court should approve the settlement without separately considering the reasonableness of the fee to be paid to Plaintiffs' counsel. *Kianpour*, 2011 WL 5375082 at *3 (citation omitted) (quotation omitted); see also *Phelps v. Detail USA, Inc.*, 2012 WL 254113, at *2 (M.D. Fla. Jan. 19, 2012) ("[W]hen attorney's fees are negotiated separately from payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents.'") (citation omitted).

Fourth, the Parties have agreed on release language which is narrowly tailored and will not result in a loss of any FLSA claims for those class members who "do nothing" – fail to opt into the settlement or request to be excluded. In other words, the proposed settlement preserves the FLSA rights of Maryland 16/17 Wage Sub-Class Members who fail to submit a Settlement and Release Claim Form. (Naturally, all individual class members who opt-out of the settlement will preserve all rights).[3]

Finally, the Settlement Agreement provides that Defendants shall pay $3,500.00 towards the cost of administration.

This settlement was the product of Court-supervised mediation occurring over multiple dates. Under the circumstances, there is no reason to doubt the fairness of this Settlement Agreement nor are there any obvious deficiencies in either the Settlement Agreement or the process in which the Settlement Agreement was reached. *See Temporary Services, Inc.*, 2012 WL 2370523 at *12 ("[S]upervision by a mediator lends an air of fairness to agreements that are ultimately reached.") (citing cases). The Settlement Agreement demonstrates that the rights of class members participating in settlement will be fairly compensated and the rights of non-participating class members have likewise been protected.

### E.   Notice to the Settlement Class

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of the proposed settlement and an opportunity to object or opt-out before it is finally approved. Notice to the class should establish the time and place of a public hearing on the proposed settlement and specify the procedure for opting out, filing objections, and appearing at the settlement hearing.

---

[3] Maryland 14/15 Wage Sub-Class Member who fail to participate in this case will have all of their FLSA, MWHL, and MWPCL claims are barred by the statute of limitations. This Settlement Agreement is the only way for Maryland 14/15 Wage Sub-Class Members, who have not already opted into this case, to seek compensation for unpaid wage claims.

NOTICE OF WAGE/HOUR CLASS ACTION SETTLEMENT, SETTLEMENT HEARING, AND CLAIMS PROCEDURE ("NOTICE")

The Parties propose a Notice of Wage/Hour Class Action Settlement, Settlement Hearing, and Claims Procedure ("Notice") (Exh. 1-D) that fully complies with Rule 23(e) and with the requirements of Due Process. The Notice is written in plain English and includes: (1) a description of the Settlement class; (2) a description of the proposed Settlement; (3) the names of counsel for the class; (4) a fairness hearing date; (5) a statement of the deadlines for filing objections to the Settlement, for submitting a claim, and for filing requests of exclusion; (6) the consequences of such exclusion; (7) the consequences of remaining in the Settlement class; (8) a statement of the Defendant's responsibility for Settlement class counsel's fees and expenses; and (9) information on how to obtain further information.

Moreover, the Settlement Agreement provides that notices will be mailed to the last known mailing addresses and email addresses for both of the proposed sub-class, all of which information has been provided to Class Counsel by Defendants. The form and content of the Notice, together with the manner of dissemination set forth above is reasonably calculated to reach all class members. It is the "best notice practicable" under the circumstances and more than satisfies the requirements of due process and Rule 23.

### F.     Fee/Cost Deferral Provision and Notice on Attorneys' Fee/Costs

The Settlement Agreement provides a "fee deferral" provision that provides that the Parties will privately negotiate a resolution of fees/costs, and present the Court with that negotiated amount at the time of the Final Fairness and Approval Hearing, or the Parties will ask the Court to determine the appropriate amount of fees/costs to be paid by the Defendants in a litigated manner. The Parties submit that a fee deferral provision in the Settlement Agreement is allowed pursuant

14

to Fed. R. Civ. P. 23(h). *See In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 445 (2016) ("…the separation of a fee award from final approval of the settlement does not violate Rule 23(h)…"); *see also In re Online DVD-Rental Antitrust Litigation*, 770 F.3d 934, 954 (9th Cir. 2010) (notice informing class members that class counsel would motion for attorneys' fees at a later time was sufficient).

Fed. R. Civ. P. 23(h), requires that "[a] claim for an award must be made by motion under Rule 54(d)(2)…" and "[n]otice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Rule 23(h) also provides that class members and Defendants may object to the motion for a fee award.

Regardless of how attorneys' fees will be determined, Plaintiffs request that the Court approve a proposed mailing (Exh. 1-E) to all Class Members, except persons who opt-out, notifying Class Members that Class Counsel will file a motion seeking the Court's approval of attorneys' fees and costs, advising Class Members of (a) the amount of the legal fees sought by Class Counsel for Court approval/determination; (b) the amount of hours involved in the course of performing as Class Counsel; (c) the hourly rates sought by Class Counsel; (d) the total amount of costs sought by Class Counsel; and (e) a deadline by which Class Members may file an objection with the Court concerning any proposed award of legal fees and costs.

This mailing is intended to comply with the requirements of both Rule 23(h), s*ee Muransky v. Godiva Chocolatier, Inc.*, 905F.3d 1200, 1215 (11th Cir. 2018) ("courts interpreting Rule 23(h) have observed that the right to object to the fee motion under Rule 23(h)(2) necessarily means that courts must give notice of the attorney's fee motion itself.") (citing *In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988, 989 (9th Cir. 2010)), by providing Class Members with "enough information to make an informed decision about whether to object to or opt out from the

15

settlement." *In re National Football League Players Concussion Injury Litigation*, 821 F.3d at 446.

Notices concerning fees/costs to class members, containing even less information than the information proposed to be provided here, have been upheld by at least one U.S. Court of Appeals. *See In re National Football League Players Concussion Injury Litigation*, 821 F.3d at 446 (holding that a class notice was sufficient when it informed class members of the likely estimated amount of attorneys' fees, the source of the fees, and the Defendants' position on the fees, even though it omitted the number of hours worked by class counsel and failed to identify any contingency fee arrangements). Thus, the Parties request that the Court approve the "fee deferral" provision in the Settlement Agreement, and approve the attached notice informing Class Members of Class Counsel's intention to motion for attorneys' fees. (Exh. 1-E).

## V. **CONCLUSION**

For all the foregoing reasons, the parties respectfully request that the Court grant this Motion, and preliminarily approve a Rule 23(e) settlement class. Under an analysis of FLSA case law or an analysis of the proposed settlement of MWHL and MWPCL claims brought pursuant to Rule 23, the proposed Settlement Agreement is fair, reasonable and adequate, and there are no reason to doubt its fairness.

The Parties request that the Court issue an Order in the form attached, submitted contemporaneously herewith.[4]

Respectfully submitted

/s/
Howard B. Hoffman, Esq. #25965
Hoffman Employment Law, LLC
600 Jefferson Plaza, Suite 204
Rockville, Maryland 20852
(301) 251-3752 (phone)
(301) 251-3753 (fax)
hhoffman@hoholaw.com

/s/
Jordan S. Liew, Esq. #20509
Hoffman Employment Law, LLC
600 Jefferson Plaza, Suite 204
Rockville, Maryland 20852
(301) 251-3752 (phone)
(301) 251-3753 (fax)
jliew@hoholaw.com

/s/ with permission
Bradford W. Warbasse, Esq. #7304
401 Washington Avenue, Suite. 200
Towson, Maryland 21204
(401) 337-5411 (phone)
(410) 938-8668 (fax)
warbasselaw@gmail.com

/s/ with permission
James E. Rubin, Esq. #15605
The Rubin Employment Law Firm, P.C.
600 Jefferson Plaza, Suite 204
Rockville, Maryland 20852
T: 301-760-7914
F: 301-838-0322
jrubin@rubinemploymentlaw.com
*Counsel for Plaintiffs*

/s/ with permission
T. Christine Pham, Esq. #25446
Rosenberg Martin Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland 21201
(410) 727-6600 (phone)
(410) 727-1115 (fax)
cpham@rosenbergmartin.com

*Counsel for Defendants*

---

[4] For the convenience of the Court, the proposed Order shall also be sent in "word" version to Chambers via electronic mail.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2019, a copy of the Joint Motion for Order Preliminarily Approving Settlement Agreement and Settlement Class Pursuant to Fed. R. Civ. 23(e) was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

/s/ *Jordan S. Liew*
Jordan S. Liew