## IN THE U.S. DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Casey Knox | * | |
| *On behalf of herself and others similarly situated* | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | Case No. 1:17-cv-01853-JMC |
| Hooper's Crab House, Inc., et al | * | |
| Defendants | * | |

---

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff Casey Knox brought suit against Defendants Hooper's Crab House, Inc., Pete Shepard, Royette Shepard, Patrick Brady, and Ryan Intrieri ("collectively Defendants") on behalf of herself and all other similarly situated persons (collectively "Plaintiffs") for alleged violations of the Fair Labor Standards Act ("FLSA") and related state laws in a so-called "hybrid" class/collective action. On August 22, 2019, after conducting a fairness hearing, the Court entered a final judgment approving the settlement of the matter and certifying the settlement class. (ECF No. 157). Pursuant to the terms of their settlement agreement, the parties consented to be bound by my determination as to the appropriate amount of attorneys' fees and costs to be awarded to Plaintiffs. (ECF No. 114-1 at 16). I have considered Plaintiffs' Motion, Defendants' Response in Opposition thereto, and Plaintiffs' Reply in support thereof. (ECF Nos. 159, 165 and 166). The issue is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the foregoing reasons, I will grant Plaintiffs' Motion in part, but will also reduce the requested amount as detailed below. I will also deny Plaintiffs' request for post-judgment interest.

## I.    BACKGROUND

The pending dispute arises from the resolution of a "two-year long hybrid class/collective action," involving fifty[1] workers, and recovery amounting to more than $400,000. (ECF No. 166 at 11). Plaintiffs request an award of attorneys' fees in the amount of $440,049.00, as well as costs and expenses in the amount of $21,478.16, for a total of $461,527.15, plus post-judgment interest at the rate of 10% from August 22, 2019, through the date of payment. (ECF No. 159 at 49). Defendants do not challenge the $21,478.16 in costs. Accordingly, the Court evaluates the fees sought below.

## II.    LEGAL STANDARD

Section 216(b) of the FLSA expressly provides that "in addition to any judgment awarded to the plaintiff or plaintiffs," the Court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Though a settlement is not a judgment, attorneys' fees are virtually always part of an FLSA resolution, and here the parties have specifically provided for a binding determination of such fees by the Court as part of their settlement agreement. (ECF 157).    In such cases, the Court is guided by a "reasonableness" standard. *Amaya v. Power Design, Inc.*, 2018 WL 690838, at *2 (D. Md. Feb. 2, 2018).

The "lodestar" analysis outlined by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), is the starting point for calculating an award of reasonable attorneys' fees. *Eastern Associated Coal Corp v. Director*, 724 F.3d 561, 570–71 (4th Cir. 2013). A lodestar amount is defined as "a reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills*

---

[1] Although Plaintiff contends that this action involved 84 workers, Counsel provides no support for such, and the Court did not find such within the record. *See, e.g.*, (ECF No. 149 at 1) ("Plaintiff Casey Knox . . . and on behalf of the forty-nine initial 'FLSA Opt-In' Plaintiffs . . ."); (ECF No. 114 at 2) ("resulting in a total of forty-nine (49) FLSA Opt-In Plaintiffs); (ECF No. 114-1 at 6) ("There are presently forty-nine 49 FLSA Opt-In Claimants plus Class Representative."); (ECF No. 102) (providing after conditional certification was granted, forty-seven putative class members joined, and two more members sought to opt-in late).

*Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In this Circuit, in arriving at an appropriate figure, courts

consider twelve so-called "*Johnson*" factors: These include:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions;
> (3) the skill requisite to properly perform the legal service; (4) the preclusion of
> other employment by the attorney due to acceptance of the case; (5) the customary
> fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the "undesirability" of
> the case; (11) the nature and length of the professional relationship with the client;
> and (12) awards in similar cases.

*Thompson,* 2002 WL 31777631, at *6 n.19 (citing *Johnson v. Georgia Highway Express, Inc.*, 488
F.2d 714, 717–19 (5th Cir. 1974)).

When considering the total number of hours expended, the Court generally considers

factors one, two, and seven, although Defendants' Opposition focuses primarily on factor one. In

assessing the reasonableness of the rates charged per hour, factors three, four, five, six, nine,

eleven, and twelve are potentially relevant, although Defendants' Opposition chiefly addresses

factors three, five, nine and twelve (focusing mostly on a perceived lack of support for the rates

given the relative lack of experience of some counsel involved, and the rates for some of these

same counsel in other cases).

Once a court determines the lodestar figure, courts "subtract fees for hours spent on

unsuccessful claims related to successful ones" and award "some percentage of the remaining

amount, depending on the degree of success enjoyed by the plaintiff." *Robinson v. Equifax

Information Servs.*, 560 F.3d 235, 244 (4th Cir. 2009). A trial court may exercise its discretion in

determining the lodestar amount because it possesses "superior understanding of the litigation,"

and the matter is "essentially" factual. *Thompson*, 2002 WL 31777631, at *6 n.18.

## III.    DISCUSSION

As outlined above, there is a three-step process for awarding statutory fees under the FLSA.

At the outset, the Court notes that Defendants' opposition does not argue for a reduction based on the "most critical factor in determining the reasonableness of a fee award — the degree of success obtained by the Plaintiff." *Hensley*, 461 U.S. at 436–37. Rather, Defendants seek a forty percent reduction overall, arguing that Plaintiffs' lodestar calculation includes unreasonable hourly rates and an unreasonable number of hours worked at virtually every stage of litigation. (ECF No. 165 at 9). Given that Plaintiffs' degree of success apparently is not contested, the Court will address Defendants' arguments regarding rates and time spent.

A. **Reasonable Hourly Rate**

A court's first task in determining an appropriate rate is to look to the prevailing markets in the relevant community. *Prusin v. Canton's Pearls*, *LLC*, 2019 WL 4438609, at *3 (D. Md. Mar. 12, 2019). "The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Spell v. McDaniel* 824 F.2d 1380, 1402 (4th Cir. 1987). *See also Eastern Associated Coal Corp*, 724 F.3d at 572 (noting an attorneys' prior fee awards may serve as a "barometer" of the prevailing market rate).

Here, Defendants take issue with the hourly rates requested by Plaintiffs' Counsel. The Plaintiffs were represented by seven attorneys from three separate law firms. (ECF No. 165 at 6). As for the senior attorneys involved, Messrs. Hoffman, Warbasse, and Rubin, each seeks compensation at the rate of $400 per hour. Counsel supports these rates in three ways: citing the comparable skill, expertise, and reputations of similar law lawyers in similar cases; the submission

of a Declaration by each lawyer;[2] and providing declarations from Sally Dworak-Fisher, Marc Smith, and Mitchell I. Batt.

Plaintiffs cite two recent fee decisions involving wage/hour lawyers with approximately the same amount of experience as Hoffman. (ECF No. 159 at 40). Accordingly, they contend that their rates are within the prevailing rates in the area for work of this nature. Plaintiffs further rely on three affidavits. First, they rely upon an affidavit from Sally Dworak-Fisher, Esquire, who indicates she is an attorney at the Public Justice Center ("PJC"), and is lead Attorney of the Workplace justice Project of the PJC, which represents workers seeking to recover minimum and overtime wages. (ECF No. 159-26 at 2). She testified that Counsel are experts in the field; the recovery obtained in this case is a significant victory, and the hourly rate charged is within the range of attorney's fees provided by the Local Rules and are consistent with the hourly rates she has been personally awarded. *Id.* Specifically, she notes that she has been involved in significant litigation in this court, and recently it found her rate of $400 per hour to be reasonable (the same rate sought by Messrs. Hoffman, Warbasse and Rubin here). *Id.* Declarations from experienced local practitioners, Marc Smith and Mitchell Batt, who are familiar with Mr. Rubin and his work, attest that the rate of $400 per hour is fair and reasonable, and consistent with market rates. *Id.* at 4; ECF Nos. 159-16 and 159-17. Defendants do not contest Mr. Warbasse's rate. (ECF No. 165 at 6 n.2).

Considering all of the above, the Court finds that there is specific evidence of the prevailing market rates in the relevant community, which are consistent with Plaintiffs' rates. Additionally, these rates are well within the Court's guidelines for attorneys with similar experience, as set forth in this Court's Local Rules. *See* L.R. App'x. B(3). Although Defendants reference previous

---

[2] Mr. Liew (ECF No. 159-12); Mr. Krafe (ECF No. 159-13); Mr. Warbasse (ECF No. 159-23); and Mr. Rubin (ECF No. 159-14).

decisions affording a lower rate, the Court does not have the specifics of those matters before it and, in any event, finds sufficient justification in the materials discussed above to justify the rates for these senior lawyers. Accordingly, the Court finds that the rate of $400/hour is appropriate for Messrs. Hoffman, Warbasse, and Rubin.

Plaintiffs seek a rate of $205 per hour for the two associates of Hoffman Law (Liew and Herbers), and $115 per hour for Hoffman Law's law clerk, Mr. McGarry. (ECF No. 165 at 6). Plaintiff notes that the rate of $205 per hour was approved by the Court in *Dominguez v. Microfit Auto Parts*, 2019 WL 423503, at *6 n.4 (D. Md. July 31, 2019). (ECF No. 159 at 40). Further, they attest that the fees requested are the same as Hoffman Law charges for the work-performed by Liew, Herbers, and Kraff, and McGarry, for fee paying clients. (ECF No. 159 at 41).

Mr. Liew is a May 2016 law school graduate, meaning in July of 2017 (when this lawsuit was filed), Mr. Liew had been admitted to the Bar for slightly more than six months. Mr. Herbers, as a 2015 graduate, would have just completed his first year. The Court's own guideline for lawyers with less than five years of experience is $150 to $225 per hour. L.R. App'x. B. The experience of both lawyers falls towards the lower-end of this range. The Court does note that the Hoffman firm operates in the Washington, D.C. market, and further recognizes that rates in that market tend to be higher than those in the Baltimore market. Nonetheless, in light of their lack of experience, and the involvement of senior lawyers in most aspects of this case, the Court believes some downward adjustment is appropriate and that a reasonable rate under the circumstances is $185/hour.

As for Mr. McGarry, he is a 2019 graduate such that he would have been a first-year law student when this case was filed. The Court does not have established rates for law clerks, but

believes that a rate similar to a paralegal rate is appropriate and will reduce his rate to $95/hours. This is consistent with this Court's reasoning in *Prusin,* discussed *supra.*

In a similar vein, the Court will order a rate of $95/hour for all time designated as "paralegal" time, both by Plaintiffs in their submission (ECF No. 159-15) and for any time entries so reclassified as "paralegal time" by the Court as set forth below. Accordingly, Plaintiffs should re-submit their fee bill reducing the rates for Messrs. Liew and Herbers to $185/hour, Mr. McGarry to $95/hour, and any paralegal time to $95/hour.

## B. Reasonableness of Hours Expended

Once the Court has determined the hourly rates at which counsel should be compensated, it turns to whether the number of hours expended are reasonable. The Supreme Court has said that counsel is expected to exercise "billing judgment," and that district courts "should exclude from this initial fee calculation hours that were not reasonably expended." *Hensley*, 461 U.S. at 434.

In the pending dispute, Plaintiffs' Counsel seeks compensation for 1558.4 hours of work. In support of this request, they provide detailed time records. (ECF No. 159-3). Despite the extensive detailed provided by Plaintiffs, Defendants broadly object to the reasonableness of the hours expended and seek an across-the-board reduction of forty percent. Defendants advance several arguments in support of their claim that the number of hours worked by Plaintiffs' Counsel were unreasonable. (ECF No. 165 at 9). These arguments are discussed in turn.

## I. Comparison of Fees to Those of Defense Counsel

First, Defendants maintain that the hours expended were unreasonable because of the stark difference between such and the hours expended by Defense Counsel. (ECF No. 165 at 10). In support of such, Defendants attach a report identifying all time expended by Defense Counsel, which according to Defendants totaled 440 hours. *Id.* at 11. As noted by the United States District

Court for the Northern District of Western Virginia, there is a "long standing and yet unresolved split of authority on the question of whether the fees, hours and costs incurred by one party are relevant to determining the fees, hours and costs for which the other party should be compensated." *Marks Const. Co. v. Huntington Nat. Bank*, 2010 WL 1836785, at *2 (N.D. W.Va. May 5, 2010) ("[T]he decision of whether a comparison of opposing counsel's time records and resulting fees would aid in a determination of the reasonableness of requested attorneys' fees is solely within the court's discretion.").

Here, Plaintiffs' Counsel represented approximately fifty plaintiffs, while Defense Counsel only represented five parties related to one employer.[3] Defendants fail to provide a sufficient explanation as to why the time they spent should correspond to that which Plaintiff was permitted to spend, other than to point out the difference. *See, e.g.*, *Ambling Mgmt. Co. v. Univ. View Partners LLC*, 2010 WL 457508, at *2 (D. Md. Feb. 3, 2010) (affirming then-Magistrate Judge Bredar's denial of a discovery request for opposing party's fees records, and noting that the reasonableness of the Plaintiff's fees (not the Defendant's) were at issue, and the hours required of one side may differ substantially, as the nature of the work required by each side may differ dramatically). Consequently, a comparison of Defense Counsel's time records does not aid this Court in a determination of the reasonableness of the requested attorneys' fees.

## II. Clerical and Administrative Time

Next, Defendants assert that Plaintiffs' Counsel improperly seeks compensation for clerical, or administrative tasks. (ECF No. 165 at 3) ("A large number of entries, such as for data entry and indexing, should have been separated or notated to be billed at a paralegal rate. Yet other entries show work that should have been deducted entirely because tasks such as . . .

---

[3] *See* (ECF No. 114) (outlining the class members within a Joint Motion to Certify the Class).

scheduling, filing, and mailing cannot be compensated"). Generally, administrative or secretarial work should not be compensated as an award for attorney's fees. *Anthony v. Crestview Wine & Spirts, LLC*, 2019 WL 4673404, at *5 (D. Md. Sept. 24, 2019) (citing *Kabore v. Anchor Staffing, Inc.*, 2012 WL 5077636, at *4 (D. Md. Oct. 17, 2012)). Fees for work performed by paralegals are generally recoverable, *but only to the extent that they reflect tasks traditionally performed by an attorney* and for which the attorney would customarily charge the client. *Id.* (emphasis added). Where a description is ambiguous as to whether the task is clerical or legal in nature, courts have declined to award fees for those hours. *Id.*[4]

Plaintiffs' Counsel articulates that it was not required to delegate such tasks as ECF filings and has exercised billing discretion by charging these tasks at a lower rate. (ECF No. 166 at 10). The Court acknowledges that in certain cases, such tasks were billed at a paralegal rate (albeit $150/hour, not the $95/hour now ordered). However, after extensive review of the time entries, the Court agrees that some reclassification is justified, and includes those reclassifications in its order below. Further, in some cases, the Court has excluded the time sought altogether where purely administrative or clerical.

### III. Duplicative, Excessive and Unnecessary Fee Entries

Defendants attack some entries as duplicative, to include "numerous entries where two or three of Plaintiffs' attorneys attended calls, hearings and meetings, and reviewed and/or revised the same documents." (ECF No. 165 at 3). This Court's Rules and Guidelines for Determining

---

[4] *See, e.g.*, *Kreuze v. VCA Animal Hosp. Inc.*, 2019 WL 2107263, at *8 (D. Md. May 14, 2019) ("While Mr. Adelman is undoubtedly an attorney, his law degree does not in and of itself support the argument that these are 'tasks traditionally performed by an attorney' or that they are not clerical or administrative in nature. The litmus test is not the title of the individual completing the task; rather it is the nature of the task itself. On the other hand, simply because an attorney bills for tasks he completes at a paralegal rate does bar him from recovering for those tasks if they are indeed legal in nature. In this Court's opinion, this as an exercise of prudent billing practices to be encouraged in a profession frequently accused of padding its invoices to meet a bottom line.").

Attorney's Fees leave open the possibility for two attorneys to be compensated when work includes "periodic conferences of defined duration held for the purpose of work organization, strategy and delegation of tasks." *See* L.R. App'x. B. *See also Chapman*, 2011 WL 2651867, at *16 (noting the question of whether two attorneys, who are not from the same firm, can bill for telephone conferences between themselves has not been addressed in the Fourth Circuit). Thus, for this type of work, this Court is not required to impose a downward adjustment for calls which both attorneys billed when the calls concerned organizing, strategizing, and delegating. *Id.* ("[A] reduction for redundant hours is warranted only if the attorneys are unreasonably doing the same work.").

Defendants also argue that some entries reflect time that was excessive or unnecessary to the task at hand. For example, Defendants argue that they produced approximately 5,000 documents, roughly the amount that would fit in one and a half Banker's box, and it should not have taken ninety (90) hours to review that volume of records. (ECF No. 165 at 15). In describing the 81.4 hours spent on "review[ing] responses," Counsel repeated the exact same phrase. (ECF No. 159-3 at 22–25) ("Review and process Defendants' discovery production, identify deficiencies in production and discrepancies in produced wage and hour records.").

As another example, Defendants point out that with regard to the initial settlement agreement, Hoffman expended 13.6 hours drafting the document, Liew then spent an additional 11.4 hours reviewing and editing it, and then Hoffman spent an additional 2.3 hours reviewing and editing it. Relatedly, time spent by multiple attorneys, *i.e.*, new associate attorneys, to get or keep "up to speed" on a case may be unreasonable where it reflects unnecessary overstaffing. *Ford v. Karpathoes, Inc.*, 2015 WL 736809, at *10 (D. Md. Feb. 19, 2015).

Throughout their Opposition, Defendants attack the time and labor set forth, given the experience of Plaintiffs' attorneys, and how much of the work that occurred never made it into a motion of pleading and were unnecessary. Defendants also correctly argue that if counsels' experience merits a $400.00 hourly rate, it also comes with the expectation that they work efficiently and utilize such experience and knowledge in doing so. In light of Defendants' arguments, the Court performed its own extensive review of the bills with an eye towards reductions for duplicative, excessive or unnecessary time entries and has made certain reductions specified in its order below. In so doing, the Court does not at all doubt that the time recorded was, in fact, worked, but concludes that the time spent for some tasks was more than would reasonably be passed on to a paying client and, therefore, unreasonable to pass on to Defendants.

IV.     **Pre-Engagement Time**

Defendants contend that entries by Counsel for pre-engagement occurrences, such as Messrs. Rubin and Hoffman's entries for communicating and interviewing potential clients and opt-ins, must be deducted. (ECF No. 165 at 17).

Further, Defendants dispute billing entries for time spent communicating with *potential opt-ins*, who may later join the case. Plaintiffs' Counsel concedes that four entries (1, 301, 302 and 303) reflect time incurred prior to filing suit, but represent that those entries were for tasks undertaken after they were retained by Ms. Knox. (ECF No. 166 at 13). Those for entries are minor and will be allowed. Further, as to the opt-ins, Plaintiffs counter that such opt-ins (considering joining after the case is filed) are at least witnesses, and thus these communications are quintessential attorney time wherein they provide advice and counsel to interested workers, information useful to evaluate their options, and to determine "their potential suitability for inclusion in this case." (ECF No. 166 at 13). Given their status as potential witnesses and the fact

that this case is a collective/class action where Plaintiffs' counsel is, in part, tasked with notifying appropriate potential class members for inclusion, the Court agrees with Plaintiffs, and will not order a further reduction.

## V.  **Preparation of Expert Report**

Next, Defendants argue that the hours claimed by the attorneys for drafting expert reports, when such could have been drafted by the experts and only reviewed and lightly edited by the attorneys, should be deducted.  (ECF No. 165 at 17).[5]  Defendants request that of the time listed under Section III.d (11.9 hours) be deducted.  *Id.*[6]  The Court disagrees.  Attorneys are often intimately involved with experts in drafting and editing expert reports, as attorneys (rather than experts) are more familiar with the legal requirements and may also have insight into the most effective way to present the information in support of the case.  Further, attorneys are often the liaison between the client and the expert, conveying and refining the factual underpinning of the report.  Given the number of plaintiffs involved, the detail required, and the legal overlay, there is nothing apparent to the Court in these entries that should not be recoverable.

## VI.  **Vague Time Entries**

Defendants also articulate that an overall reduction of hours is appropriate because of the improper format of Plaintiffs' billing records.  (ECF No. 165 at 12).  They contend that Plaintiffs did not comply with the Local Rules, because instead of "organizing the entries into the ten litigation phases, they chose to further break down each phase into subsections, and some

---

[5] Although, generally, Mr. Warbasse's time was not contested, Counsel noted that Mr. Warbasse expended 22.4 hours relating to the Expert Report on damages, and within his Declaration states that he was primarily responsible for "preparation of a Rule 26(a) expert report.  (ECF No. 159-23)

[6] Defendants further assert that .1 hours must be deducted for nonbillable time reviewing an expert invoice.  Given counsel's role in working with the expert, it is not unreasonable for counsel to spend a short time verifying that the invoice submitted should be paid as submitted.  Accordingly, the Court will not deduct the .1 hours as urged by Defendants.

subsections into sub-sections." (ECF No. 165 at 12). This Court need not decide whether such practice follows the Local Rules, but notes that it would be beneficial, in the future, for Plaintiffs' Counsel to provide (at the very least) a breakdown of the total hours worked and fees charged, within each of the ten litigation phases. *See Chapman*, 2011 WL 2651867, at *18 n.11 (explaining that across-the-board reductions are appropriate when billing records are voluminous and numerous billing entries are in dispute). However, clearly, these records provide detailed information that permits this Court to evaluate the tasks completed and charged to the parties.

VII. **Fee Preparation**

Finally, Defendants argue the Court should deny fees for all time spent relating to preparing the Fee Petition. (ECF No. 165 at 19). Certainly, it is true that prevailing plaintiffs may be awarded fees for attorney time spent preparing a fee petition. *Ford*, 2015 WL 736809, at *11 (discussing Local Rule 1(b)(x), which specifies that counsel should present time spent on "fee petition preparations" separately from time spent on other tasks). Preparing a fee petition is akin to preparing any other motion, as arguments supporting the amount and discussing the application of the *Johnson* factors must be detailed. Thus, the Court will not deduct all fees so designated, as Defendants urge. Nonetheless, attorneys typically do not bill clients for time they spend revising, reorganizing, reformatting, or editing bills, and there are multiple time entries reflecting such activities over and above what review might be necessary to support a particular argument. Accordingly, those entries are disallowed, as set forth in the Court's order below.

VIII. **Post-Judgment Interest**

Under the post-judgment statute, post-judgment interest "shall be awarded on any money judgment in a civil case recovered in district court." 28 U.S.C. § 1961. Specifically, such interest

is awarded from the "date of entry of judgment." *Id.* While not addressed by either party the appropriate "date of entry of judgment" is oftentimes contested. *See, i.e.*, *Fryer v. A.S.A.P. Fire & Safety Corp., Inc.*, 758 F. Supp. 2d 29, 33 (D. Mass. Dec. 15, 2010), *aff'd*, 658 F.3d 85 (1st Cir. 2011) ("A circuit split exists as to whether postjudgment interest on an attorneys' fee award runs from the date of the merits judgment or the date of the quantum judgment. Courts in this district calculate fees from the date of the merits judgment.") (international citations omitted). As Counsel has not cited, nor can this Court find, any precedent concerning the appropriate date for "final judgment," this Court declines to award post-judgment interest from August 22, 2019 (the date of the final judgment as to the merits of the claim) as requested by Plaintiffs. (ECF No. 159-29 ¶ 4).[7] On August 22, 2019, this Court issued a Final Judgment Approving Settlement and Certifying the Settlement Class. (ECF No. 157). Notably absent from the Settlement, however, was an agreement on attorneys' fees. This aspect of the case was specifically referred to Judge Sullivan (ECF No. 158), and a settlement conference was held on October 17, 2019. This mediation was unsuccessful, and the parties remained unable to agree on the appropriate amount of fees.(ECF 167). Accordingly, this Court was required to ascertain the appropriate amount.

In this Court's view, until this Order, the appropriate decision regarding fees remained hotly contested, unresolved, and clearly unascertainable. *See Vandevender v. Blue Ridge*, 756 Fed. App'x. 230, 232 (4th Cir. 2018) ("[T]hese rulings are based on the principle that postjudgment interest should run from the time the amount of the judgment was "ascertainable in a meaningful

---

[7] *McKnight v. Circuit City Stores, Inc.*, 14 F. App'x. 147, 155–56 (4th Cir. 2001) ("Here, [Defendant] has never contested that it is liable for attorneys' fees in some amount. Moreover, while Circuit City has criticized the billing practices of Plaintiffs' counsel, we have never questioned adequacy of the evidence supporting counsel's fee and costs requests. Accordingly, it was proper for the district court to award interest from the date of the initial fee and costs awards (June 25, 1997). And, lest there be any confusion on remand, we note that nothing in this opinion should be construed to interrupt the accumulation of interest. This interest should be calculated based on the amount of fees and costs ultimately determined to be appropriate.").

sense."); *Powell v. Carey Int'l Inc.*, 548 F. Supp. 2d 1351 (S.D. Fla. 2008) (holding employees were entitled to interest only from date that cost judgment was entered, rather than the date the final judgments issued). In the circumstances presented here (an action pursuant to Section 216(b) of the FLSA wherein attorneys' fees and such are to be assessed separately), the determination of attorneys' fees was clearly a separate matter. *See Saman v. LBDP, Inc.*, 2013 WL 2949047, at *3–6 (D. Md. June 13, 2013) ("Finally, where a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must also "be independently assessed . . ."). Accordingly, I shall award postjudgment interest, if any, from a date fifteen (15) days after of Plaintiffs submit their revised petition consistent with this Memorandum and Order.

## IX.    CONCLUSION

In light of the above,

1. Plaintiffs' Motion (ECF No. 159) is GRANTED in part;

2. Plaintiffs are to submit a revised bill reflecting the Court's comments and incorporating the specific reductions set forth below within fourteen (14) days; and

3. Plaintiffs' request for post-judgment relief is DENIED at this time, but post-judgment interest will begin to run fifteen (15) days after Plaintiffs submit their revised petition if the amount remains unpaid.

A separate order shall follow.


Date: November 18, 2019                           _____/s/_____
                                                  J. Mark Coulson
                                                  United States Magistrate Judge

## Court's Order Regarding Specific Time Entries

In addition to reducing rates as indicated above (*i.e.*, Liew, Herbers, McGarry and Paralegal Rate), the Court recharacterizes or disallows the entries below.

**I.**     **The following time entries should be re-characterized as Paralegal hours, and accordingly recalculated at $95/hours:**

340

341

356

357

443

446

448

449

451

452

453

454

456

460

461

462

463

466

467

574

586

587

588

594

805

1132

1234

1235

**II.**     **The Court disallows the following time entries as administrative/clerical tasks:**

208

225

228

236

290

554

562

761

791

792

**III.**     **The Court disallows (or, where indicated, partially disallows) the following time entries as duplicative, excessive and/or unnecessary:**

259

283

338

350

351

395

402

404 (2.0 allowed; 1.7 disallowed)

406

411

435

438

496

497

498

499

502

506

509

510

511

529

541

543

544

545

546

551

552

556

563

564

566

592

621 (1.0 allowed; .7 disallowed)

638

718 (1.0 allowed; .7 disallowed)

720

752

762

766

767

769

770

794

795

808

809

810

880

881

882

886

1047

1055

1061

1062

1064

1067

1075

1184

1188

1291

1292

**IV.** **The Following entries are disallowed because, in the Court's view, reformatting/reorganizing of bills or expanding/modifying the description of time entries should not be chargeable to an opponent just as it would not be chargeable to a paying client.** *See, supra*, Section III.B.7 (noting the Court does believe that time spent reviewing bills for purposes of supporting a substantive argument in support of a

fee petition is recoverable, and accordingly, did not include such entries in the following list):

1255

1256

1257

1258

1261

1263

1264

1265

1266

1267

1268

1269

1270

1271

1277

1278

**V.**